

# IN THE
# TENTH COURT OF APPEALS

## No. 10-23-00041-CV

## IN THE INTEREST OF A.A.V., A CHILD

## From the County Court at Law
## Ellis County, Texas
## Trial Court No. 107697CCL

## MEMORANDUM OPINION

After a jury trial, appellants, Mother and Father, appealed the trial court's order terminating their parental rights to their child, A.A.V. In one issue with many subparts, Mother and Father contend that the evidence is legally and factually insufficient to support all predicate grounds for termination of their parental rights and that termination of their parental rights is in the best interest of A.A.V.[1] We affirm.

---

[1] Mother and Father's presentation of this appeal is arguably multifarious. *See In re S.K.A.*, 236 S.W.3d 875, 894 (Tex. App.—Texarkana 2007, pet. denied) (observing that a multifarious issue or point of error is one that raises more than one specific ground of error). Courts may disregard any assignment of error that is multifarious. *Rich v. Olah*, 274 S.W.3d 878, 885 (Tex. App.—Dallas 2008, no pet.). However, a reviewing court may consider a multifarious issue if it can determine, with reasonably certainty, the error about which appellant wants to complain. *Id.* Because each predicate ground can independently support termination of Mother and Father's parental rights, and because termination of Mother and Father's parental rights also requires that termination is in the best interest of A.A.V., we will consider each of the

<strong>Mother and Father's Issues</strong>

On appeal, Mother contends that the predicate findings under subsections 161.001(b)(1)(A), (b)(1)(D), (b)(1)(E), (b)(1)(N), and (b)(1)(O) of the Texas Family Code, as well as the best-interest finding, are not supported by legally and factually sufficient evidence. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(A), (b)(1)(D), (b)(1)(E), (b)(1)(N), (b)(1)(O), (b)(2). Father contends that the predicate findings under subsections 161.001(b)(1)(D), (b)(1)(E), (b)(1)(N), and (b)(1)(O) of the Texas Family Code, as well as the best-interest finding, are not supported by legally and factually sufficient evidence. *See id.* § 161.001(b)(1)(D), (b)(1)(E), (b)(1)(N), (b)(1)(O), (b)(2).

PREDICATE FINDINGS

### Standard of Review

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002); *see also In re J.F.-G.*, 612 S.W.3d 373, 381-82 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304

---

subparts presented on appeal as separate issues. *See* TEX. FAM. CODE ANN. § 161.001(b) (stating that in an involuntary termination proceeding, the Texas Department of Family and Protective Services must establish: (1) at least one ground under subsection (b)(1) of section 161.001; and (2) that termination is in the best interest of the child); *see also In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003) ("Only one predicate finding under section 161.001[(b)](1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." (citations omitted)); *In re J.S.S.*, 594 S.W.3d 493, 503 (Tex. App.—Waco 2019, pet. denied) ("If multiple predicate grounds are found by the factfinder, we will affirm based on any one ground because only one ground is necessary for termination of parental rights." (citation omitted)).

(Tex. 2021). If multiple predicate violations are found by the factfinder, we will affirm based on any one finding because only one finding is necessary for termination of parental rights when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *see In re J.S.S.*, 594 S.W.3d 493, 503 (Tex. App.—Waco 2019, pet. denied). Moreover, we give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge "of the credibility of the witnesses and the weight to be given their testimony." *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

Subsection 161.001(b)(1)(E) of the Texas Family Code provides that a parent's rights may be terminated if it is found that the parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(b)(1)(E). To "endanger" means to expose to loss or injury, to jeopardize. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Under subsection 161.001(b)(1)(E), the relevant inquiry is whether evidence exists that the endangerment of the child's well-being was the direct result of the parent's conduct, which includes acts, omissions, or failures to act. *In re K.A.S.*, 131 S.W.3d 215, 222 (Tex. App.—Fort Worth 2004, pet. denied). It is not necessary, however, that the parent's conduct be directed at the child or that the child actually suffer injury. *Boyd*, 727 S.W.2d at 533. The specific danger to the child's well-

being may be inferred from parental misconduct standing alone. *Id.* In making this determination, a factfinder court may consider conduct that occurred before and after the child's birth, in the child's presence and outside the child's presence, and before and after removal by the Texas Department of Family and Protective Services ("Department"). *In re J.O.A.*, 283 S.W.3d at 345. A parent's past endangering conduct may create an inference that the parent's past conduct may recur and further jeopardize as child's present or future physical or emotional well-being. *See In re D.M.*, 58 S.W.3d 801, 812 (Tex. App.—Fort Worth 2001, no pet.).

**Discussion**

Paula Ringer, A.A.V.'s caseworker, noted that the Department received an allegation that Mother was neglectful in supervising A.A.V., who was seventeen months old at the time of trial. After an investigation, the Department found reason to believe the allegation. Regarding the neglectful-supervision allegation, Ringer testified that:

> [A.A.V.]'s mother had left her with a friend [a college student]. She had left her with a friend on multiple occasions for extended periods of time.[2] She did not leave financial resources to care for the child. She was—she did not have any authority to give permission for medical care. The caregiver was unable to contact [Mother] in case of emergency. She was able to communicate with her only through social media. And when she was asked to pick up the child, she did not.

---

[2] Mother explained that she left A.A.V. with the college student for one four-week stretch because she had been kidnapped and sexually assaulted by an unknown assailant and could not contact anyone. Mother did not report this incident to the police "because he raped [her] with a condom on so there was no proof that he did anything."

Thereafter, A.A.V. was removed.

The evidence shows that Mother and Father have repeatedly engaged in domestic violence, which endangers the physical and emotional well-being of A.A.V. *See In re O.E.R.*, 573 S.W.3d 896, 906 (Tex. App.—El Paso 2019, no pet.) (noting that a parent's choice to continue a relationship with a violent or abusive partner can create an endangering environment for children); *In re E.R.W.*, 528 S.W.3d 251, 254 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards." (citation omitted)); *Jordan*, 325 S.W.3d at 724 (stating that evidence that a person has engaged in abusive or violent conduct in the past permits an inference that the person will continue to engage in violent behavior in the future).

Officer Jabari Smith of the Dallas Police Department responded to a call on April 7, 2022, where Father attempted to assault his sister by swinging at her with a closed fist but missed and struck his mother instead. Father was arrested for assault family violence.

Officer Stephanie Straw of the Irving Police Department described a second instance of domestic violence occurring on May 16, 2022, where Mother and Father had a "physical altercation" that resulted in Mother sustaining cuts and scratches to her chest and wrist that were bleeding. Father had bloody knuckles on the right side of his hand because he had punched a wall in the room.

Officer Cody Roberts of the Irving Police Department testified about a third instance of domestic violence where Mother acknowledged that "she had thrown a few items at [Father] and he had come up and slapped her in the face and then thrown an object at her which hit her in the rear." As a result of the altercation, Mother had red marks on her left cheek, a mark on her upper chest, and a mark on her buttocks.

The evidence also established that Mother and Father abused drugs both before and after removal of A.A.V. *See In re J.O.A.*, 283 S.W.3d at 345 (noting that evidence of drug use may constitute evidence of endangerment); *see also In re G.M.*, 649 S.W.3d 801, 810 (Tex. App.—El Paso 2022, no pet.) ("A parent's illegal drug use and its effect on parenting ability may support the conclusion that a child's surroundings endanger her physical or emotional well-being." (citing *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.))); *Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253-54 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (en banc) (noting that continued illegal drug use after a child's removal is conduct that jeopardizes parental rights and establishes an endangering course of conduct). In fact, Mother tested positive for marihuana in each of the six random drug tests she completed, and Father tested positive for marihuana and methamphetamine. In addition, both Mother and Father missed drug tests. *See In re E.M.*, 494 S.W.3d 209, 222 (Tex. App.—Waco 2015, pet. denied) (stating that it is reasonable for the factfinder to infer from a parent's failure to take a drug test that the parent was using drugs during the proceedings).

Furthermore, neither Mother nor Father completed any services listed in their Family Service Plans or provided any child or medical support or gifts or letters for A.A.V. *See In re R.F.*, 115 S.W.3d 804, 811 (Tex. App.—Dallas 2003, no pet.) (considering, as part of the endangering-conduct analysis, a parent's failure to complete a service plan). Also, Ringer emphasized that out of forty-eight possible visits, Mother only visited A.A.V. "a total of nine times since the beginning of the case." Father only visited A.A.V. "a total of five times." *See, e.g., In re L.S.*, No. 10-22-00119-CV, 2022 Tex. App. LEXIS 6332, at *6 (Tex. App.—Waco Aug. 24, 2022, no pet.) ("A parent's failure to regularly participate in visitation can reasonably be found to be emotionally endangering to the child's well-being." (citing *In re A.F.*, No. 07-19-00435-CV, 2020 Tex. App. LEXIS 4152, at *17 (Tex. App.—Amarillo May 29, 2020, pet. denied) (mem. op.))).

And finally, Ringer detailed Father's extensive criminal history as including "drug charges [and] possession of controlled substances. He has several assault family violence charges. He has numerous criminal trespass warnings issued to him from businesses. And he has [an] assault family violence conviction. I believe that he's currently on probation for a possession of a controlled substance charge." According to Ringer, Father "was arrested a total of four times since this case began." *See In re J.F.-G.*, 627 S.W.3d 304, 312-15 (Tex. 2021) (reaffirming that a parent's criminal history and imprisonment are factors when considering endangering conduct although the mere fact that a conviction or sentence of incarceration, standing alone, will not support termination under

Subsection (E)); *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("[C]onduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child."); *In re A.W.T.*, 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.) ("[I]ntentional criminal activity which exposed the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well being of the child." (internal citation omitted)).

Based on our review of the record under the appropriate standards for determining legal and factual sufficiency of the evidence, we conclude that the evidence is legally and factually sufficient to support the trial court's findings that Mother and Father engaged in conduct that endangered the physical and emotional well-being of A.A.V. pursuant to subsection 161.001(b)(1)(E) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *see also In re J.O.A.*, 283 S.W.3d at 344-45; *In re J.F.C.*, 96 S.W.3d at 264-68; *In re J.F.-G.*, 612 S.W.3d at 381-82. And because we find the evidence is sufficient under subsection 161.001(b)(1)(E), we have addressed the concerns of protecting Mother and Father's due-process and due-course-of-law rights. *See In re N.G.*, 577 S.W.3d 230, 235-36 (Tex. 2019). We overrule Mother and Father's "Issue 1(b)."

BEST-INTEREST FINDING

In addition to the foregoing, Mother and Father both complain that the evidence is insufficient to show that termination of their parental rights is in the best interest of A.A.V. We disagree.

**Applicable Law**

In a parental-rights-termination case, the best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). These factors are: (1) the child's wishes; (2) the child's emotional or physical needs now and in the future; (3) emotional or physical danger to the child now and in the future; (4) the parenting abilities of the parties seeking custody; (5) programs available to help those parties; (6) plans for the child by the parties seeking custody; (7) the stability of the proposed placement; (8) the acts or omissions of the parent that indicate that the existing parent-child relationship is not proper; and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). The Department need not prove all nine *Holley* factors as a "condition precedent" to termination; the absence of some factors does not bar the factfinder from finding that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). And while no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet). Evidence establishing one of the predicate grounds under section 161.001(b)(1) also may be relevant to determining the best interest of the child. *In re C.H.*, 89 S.W.3d at 27-28.

When children are too young to express their desires, the factfinder may consider that the children have bonded with the foster family, are well-cared for by them, and

have spent minimal time with a parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

**Discussion**

As noted earlier, A.A.V. was seventeen months old and had been in her current placement for eleven months at the time of trial. Due to her age, A.A.V. was unable to express her desires. In any event, Ringer opined that,

> Up until a month ago, [A.A.V.] was the only child in that home. There's two adults that live there and so a three bedroom home. [A.A.V.] has her own room. She had her own bed. She—I believe there's a pet. She has all her basic needs are met. She's current on all of her medical and dental. She does not require any therapeutic services. She doesn't take any prescriptions. She is thriving, she's walking, running, jumping, climbing. She's a happy little girl. She is surrounded by people that love her and adore her and place her safety and her needs first.

Ringer emphasized that A.A.V.'s current placement is the most stable home environment A.A.V. has ever had.

Ellis County CASA Brenna Bailey echoed Ringer's sentiments:

> [A.A.V.] is in a very loving environment. She is adored and treasured. She has many toys to pay with, a very enriched environment. She loves to play. She's allowed to run and dance. She has many books. She has her own room that is filled [with] things for her to play with. Every day she's learning new skills. She's in an extremely loving home. Even the extended family loves her and takes care of her and supports the placement as well.

Bailey affirmed that A.A.V.'s current placement is meeting her needs both now and will do so in the future. Furthermore, A.A.V.'s current placement wishes to adopt her.

In contrast, the record reflects that Mother and Father rarely visited A.A.V. during this case and have repeatedly been unable or unwilling to provide a safe, stable environment for A.A.V. free from drug abuse and domestic violence. Indeed, Mother regularly left A.A.V. in the care of a college student and disappeared for extended periods of time, often with no explanation. One such disappearance was for approximately five months. Further, Father has been arrested four times during the pendency of this case and spent most of this case incarcerated. In addition, both Mother and Father have tested positive for drugs during this case, and neither Mother nor Father have completed any of the services offered by the Department and required by their respective Family Service Plans.

Mother also admitted at trial that she cannot provide a stable home for A.A.V. and that it is in the best interest of A.A.V. to remain in her current placement temporarily. In fact, Mother indicated that she wanted A.A.V. "to temporarily be adopted with [current placement] because I believe that they're a God-given blessing for my daughter because they're truly the most nicest people I've ever met in my life."

Father also did not have any plans for providing A.A.V. with a stable and safe living situation. Father is not employed and claims to live with his stepfather, sister, little brother, nephew, and niece in a four-bedroom, two-bath house.

Based on our review of the record, we find that the above-mentioned evidence addresses several of the *Holley* factors and that those factors weigh in favor of the trial

court's order of termination. *See Holley*, 544 S.W.2d at 371-72; *see also In re C.H.*, 89 S.W.3d at 27-28; *In re J.O.C.*, 47 S.W.3d at 115. Therefore, viewing the evidence under the appropriate standards, we hold that the evidence is legally and factually sufficient to support the trial court's conclusion that termination of Mother and Father's parental rights is in the best interest of A.A.V. Accordingly, we overrule Mother and Father's "Issue 1(e)."[3]

## Conclusion

We affirm the judgment of the trial court.

STEVE SMITH
Justice

Before Chief Justice Gray,
    Justice Johnson,
    and Justice Smith
Affirmed
Opinion delivered and filed June 28, 2023
[CV06]



---

[3] In light of our disposition of Mother and Father's "Issue 1(b)" and "Issue 1(e)," we need not address Mother and Father's remaining issues. *See* TEX. R. APP. P. 47.1, 47.4; *see also In re A.V.*, 113 S.W.3d at 362; *In re J.S.S.*, 594 S.W.3d at 503.